UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MICHELLE MARY NIPCON,

                              Plaintiff,

        v.                                              **DECISION AND ORDER**
                                                        12-CV-1184S
CAROLYN W. COLVIN,[1]
ACTING COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.


        1.      Plaintiff Michelle Nipcon challenges an Administrative Law Judge's ("ALJ")

determination that she was not disabled within the meaning of the Social Security Act ("the

Act").

        2.      On October 1, 2008, Nipcon filed an application for Supplemental Security

Income ("SSI") under Title XVI of the Act, claiming an inability to work as of that filing date[2]

due to bipolar disorder, anxiety and hepatitis C. (R. 56, 143-47.)[3] The application was

denied on March 11, 2009. (R. 49-56.) Nipcon then requested a hearing, which was held

before ALJ Robert T. Harvey on March 9, 2011. (R. 28-45.) Nipcon was represented by

counsel at the hearing, at which she appeared in person and testified. (Id.)

        3.      ALJ Harvey considered the application *de novo* and, on March 24, 2011,

issued a written decision finding Nipcon was not disabled. (R. 12-23.) Nipcon filed a written

---

        [1] Carolyn W. Colvin became Acting Commissioner of Social Security on February 14, 2013. She is
substituted for Michael J. Astrue as the Defendant in this action under Rule 25(d) of the Federal Rules of
Civil Procedure.

        [2] Nipcon originally claimed a disability onset date of February 1, 1998, which she later amended to
October 1, 2008. (R. 143, 31.)

        [3] Citations to the administrative record are designated as "R."

request for review with the Appeals Council (R. 10-11), which denied the request on October 9, 2012 (R. 1-4). She commenced this civil action on November 29, 2012, challenging the Commissioner's final decision.[4]

4.     Both the Commissioner and Nipcon filed motions for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure, on August 12, 2013 and September 20, 2013, respectively. (Docket Nos. 11 and 15.) The motions were fully briefed on November 21, 2013, at which time this Court took the matter under advisement. For the reasons set forth below, the Commissioner's motion is granted and Nipcon's motion is denied.

5.     A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla"; it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

6.     "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the

---

[4] The ALJ's January 4, 2011 decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

7.     The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Act. See 20 C.F.R. §§ 404.1520, 416.920. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

8.     The five-step process is detailed below:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.   If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the

[Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

9.      Although the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step of this inquiry is, in turn, divided into two parts.  First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience.  Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

10.      In this case, the ALJ made the following findings with regard to the five-step process: (1) Nipcon had not engaged in substantial gainful activity since her alleged disability onset date of October 1, 2008 (R. 17); (2) her depression and panic disorder were severe impairments within the meaning of the Act (Id.); (3) these impairments did not meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Id.) ; (4) Nipcon had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, with moderate limitations in her ability to interact with the general public and make decisions, and could tolerate jobs with a moderate amount of stress (R. 19); (5) she had no past relevant work (R. 21); and (6) jobs existed in substantial number in the national economy that an individual of her age, education, past relevant experience, and RFC could perform (R. 22).

4

11.     When Nipcon filed her application for benefits, she was 41 years old and had completed high school and one year of college. She initially claimed she was disabled since 1998. It is undisputed her claimed disability is due to nonexertional, mental impairments only. The record does not contain any evidence of mental health symptoms prior to October 1, 2008, the date on which she filed her SSI application.

Nipcon saw two treating physicians shortly thereafter, on October 3 and 22, 2008. She made no complaints regarding her mental health to either doctor. (R. 209-214.) On March 2, 2009, Nipcon was seen by consultative psychiatric examiner, Dr. Thomas Ryan. (R. 216-19.) At the examination, Nipcon stated she uses marijuana about twice per week, and Dr. Ryan noted a possible relationship between drug use and her reported dysphoric mood, insomnia, and irritability. He diagnosed depressive disorder and panic disorder, and recommended mental health treatment. Dr. Ryan opined that Nipcon had no significant limitation in her ability to follow and understand simple directions, perform simple tasks, maintain attention and concentration, maintain a regular schedule, learn new tasks, or perform complex tasks. He found moderate limitation in the ability to make appropriate decisions, deal with others, and deal with stress. (R. 218.) ALJ Harvey noted in his decision that moderate limitation means more than a slight limitation, but "the individual is still able to function satisfactorily." (R. 19.)

On March 10, 2009, C. Butensky, a State agency psychologist, reviewed the existing record. (R. 224-36.) Butensky did not examine Nipcon and, at that time, Dr. Ryan's assessment was the only mental health evidence in the record. Butensky prepared a mental RFC indicating Nipcon had either no significant limitation or moderate limitation for all listed functional areas. (R. 244-246.) He concluded she retained the ability to do simple,

repetitive, low contact work.

Nipcon eventually sought treatment for depression on November 26, 2010, when she saw her general physician, Dr. Yu, who had treated her since October 2008. (R. 272-74.) Dr. Yu diagnosed chronic depression and prescribed medication. At a follow-up visit on January 17, 2011, Dr. Yu increased Nipcon's medication and recommended she see a counselor or psychiatrist. (R. 270.) This was the last medical report prior to the March 9, 2011 hearing. At the time of the hearing, Nipcon had not yet seen a mental health specialist.

12.     Nipcon argues that the ALJ committed legal error in evaluating her RFC. More specifically, she maintains the ALJ failed to address the mental demands required to perform unskilled work, failed to discuss each work-related mental function identified in SSR 96-8p and SSR 85-15, and did not sufficiently evaluate the opinion of State agency psychologist Butensky. Nipcon contends there is substantial evidence to support a more limited RFC which, in turn, would require that the Commissioner obtain the testimony of a vocational expert to assess the availability of jobs she can perform in light of her limitations.

13.     Where, as here, no exertional impairment exists, unskilled jobs at all exertional levels constitute the potential occupational base. SSR 85-15, 1985 SSR LEXIS 20, at *10-11 (Jan. 1, 1985). The SSA has defined the basic mental demands of unskilled work to include: understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. § 416.921(b); see also 1985 SSR LEXIS 20, at *11 (noting that the claimant must be able to meet these demands on a sustained basis).

14.     The Court first rejects Nipcon's suggestion that the ALJ was required to

explicitly itemize and discuss every possible mental limitation. The ALJ fully discussed Dr. Ryan's opinion, which assessed Nipcon's ability to perform the basic mental demands of unskilled work. The Commissioner's RFC is consistent with Dr. Ryan's assessment of the nature and severity of her limitations. Thus, the ALJ did not commit legal error, and the RFC is supported by substantial evidence.

15.     The ALJ also did not err when he failed to discuss or assign weight to the Butensky assessment. First, an ALJ is not required to discuss every report or piece of evidence in the record. And, in this case, the only mental health evidence available to Butensky, who did not examine Nipcon, was the report from Dr. Ryan. As noted, the ALJ discussed Dr. Ryan's opinion, assigned it some weight, and incorporated the assessed limitations in his RFC finding. Inclusion of the Butensky assessment would not alter the outcome here.

16.     Nipcon's final contention is that the ALJ was required to obtain the testimony of a VE with regard to the potential occupational base for an individual with her limitations. "If a claimant has nonexertional limitations that 'significantly limit the range of work permitted by his exertional limitations,' the ALJ is required to consult with a vocational expert." Zabala v. Astrue, 595 F.3d 402, 410 (2d Cir. 2010) (quoting Bapp v. Bowen, 802 F.2d 601, 605 (2d Cir. 1986)). A nonexertional impairment will "significantly limit" a claimant's range of work "when it causes an additional loss of work capacity beyond a negligible one, or, in other words, one that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity." Zabala, 595 F.3d at 411 (internal quotation marks and alteration omitted).

17.     SSR 85-15 describes the occupational base of unskilled work as follows:

> These jobs ordinarily involve dealing primarily with objects, rather than with data or people, and they generally provide substantial vocational opportunity for persons with solely mental impairments who retain the capacity to meet the intellectual and emotional demands of such jobs on a sustained basis.

1985 SSR LEXIS 20 at *12. Generally, then, these jobs require little personal interaction or decisionmaking. The ALJ's finding—that Nipcon's moderate limitations in the ability to interact with others, make decisions, and tolerate stress "have little or no effect on the occupational base of unskilled work at all exertional levels"—adheres to applicable legal standards and rests on substantial evidence. Accordingly, his use of the Medical-Vocational Guidelines was appropriate.

****

IT HEREBY IS ORDERED, that Defendant's Motion for Judgment on the Pleadings (Docket No. 11) is GRANTED;

FURTHER, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 15) is DENIED;

FURTHER, that the Clerk of the Court shall close this case.

SO ORDERED.


Dated: January 31, 2014
        Buffalo, New York

                                        /s/William M. Skretny
                                      WILLIAM M. SKRETNY
                                          Chief Judge
                                  United States District Court